Fletcher A. Burton and Selma J. Burton, Husband and Wife v. Commissioner. Fletcher A. Burton v. Commissioner.
Burton v. Commissioner
Docket Nos. 54994, 54995.
United States Tax Court
T.C. Memo 1957-42; 1957 Tax Ct. Memo LEXIS 210; 16 T.C.M. (CCH) 182; T.C.M. (RIA) 57042; March 14, 1957
*210 Petitioner, Fletcher A. Burton, derived income from a variety of sources during the years 1944 to 1950, inclusive. He owned a great many pieces of depreciable income-producing property. His books and records were inadequate to correctly determine the amount of his taxable income during such years. Held, respondent was justified in using the net worth method to determine petitioner's taxable income for such years. Held, further, no part of the deficiencies was due to fraud with intent to evade tax. Held, further, respondent properly imposed an addition to tax for substantial underestimate of estimated tax for the year 1950. Held, further, since the returns were not false or fraudulent, the years 1944 to 1948, inclusive, are barred by the statute of limitation. James W. Blanks, Esq., for the petitioners. Charles R. Hembree, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion This proceeding involves the following deficiencies in income tax and additions thereto: Additions to Tax
Docket
Income
Sec.
Sec.
No.
Year
Tax
293(b)
294(d)(2)
54994
1944
$2,246.28
$1,123.14
54994
1945
2,415.90
1,525.79
54994
1946
932.11
677.31
54995
1947
2,657.75
1,417.21
54994
1948
1,174.00
628.66
54994
1949
492.46
246.23
54994
1950
2,194.54
1,097.27
$144.00
The *211 issues to be decided are: (1) Whether respondent's use of the net worth method in determining petitioners' taxable income for the years in issue was proper; if so, (2) whether the amounts of unreported income so determined by such method were correct; (3) whether any part of the deficiencies was due to fraud with intent to evade tax; and (4) whether the respondent erred in imposing an addition to tax for substantial underestimate of estimated tax for the year 1950. The years 1944 to 1948, inclusive, are barred by the statute of limitation absent a showing that the returns were false or fraudulent with intent to evade tax. Concessions were made with respect to certain items included in the net worth statement which will be taken into account in a Rule 50 computation. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. Fletcher A. Burton, hereinafter referred to as the petitioner, and his wife, Selma J. Burton, were residents of Clarksville, Virginia, during the years in issue. They filed joint income tax returns for all such years except for the year 1947 when petitioner filed an individual return. All *212 returns were filed with the former collector of internal revenue for the district of Virginia. During the years in issue, petitioner derived substantial amounts of income from a variety of business activities, including the renting of business property, farming, and the operation of a tobacco sales warehouse. He was also a director of a local bank and a member of the Clarksville town council. He assisted others in the preparation of their income tax returns and charged a fee for such service. Petitioner reported the following amounts of gross and net income on his original returns: Year
Gross Income
Net Income
1944
$20,203.84
$ 1,983.64
1945
31,235.07
4,751.77
1946
28,444.19
4,196.52
1947
24,489.83
4,450.55 *
1948
32,082.48
7,934.19
1949
29,712.44
9,361.47
1950
46,644.88
22,451.10
Because of the inadequacy of petitioner's books and records, respondent computed petitioner's net taxable income during each of the years in issue by the net worth method. In addition to uncontested nondeductible living expenses, he added $1,500 each year to the total annual increase in net worth which was an estimate of other living expenses paid in cash. Petitioner maintained a cash receipts and disbursements *213 journal and a property ledger. The property ledger contained many figures which were only estimates of the value of properties or additions thereto rather than actual cost. Many improvements to certain parcels of petitioner's farm property on which he claimed depreciation were not listed in the property ledger. The only record of depreciation which petitioner maintained on the mlay properties which he owned was contained in his retained copies of his income tax returns. His returns for 1944, 1945, 1946, and 1947 did not contain an itemized list of the real estate or other items on which he claimed depreciation, but showed only large total amounts as the depreciable value of "brick rentals," "frame rentals," etc. The returns for 1948, 1949, and 1950 did not specifically identify the many properties on which depreciation was claimed but contained only a listing of the individual items designated, for example, as "frame farm building" or "team and equipment." The depreciation claimed by petitioner on his returns during each of the years in issue represented substantial deductions. The amounts so claimed were as follows: 1944
$6,461.50
1945
7,997.26
1946
6,088.95
1947
6,782.17
1948
7,815.62
1949
7,250.77
1950
6,643.37
In *214 1933, petitioner organized the Burton Manufacturing Company, a corporation, which was thereafter engaged in the manufacture of barrel staves. Certain real estate and machinery were transferred by him to the corporation for its stock, having a par value of $12,500. The corporation also assumed notes on such property which petitioner had made payable to himself in the total amount of $17,288.31. Such notes were secured by a deed of trust. On July 30, 1943, the deed of trust was released. In 1944, the corporation reconveyed the property to petitioner in exchange for his stock. In reconstructing petitioner's income by the net worth method, the respondent included the stock of the Burton Manufacturing Company in the opening net worth statement at a value of $12,500. Because the property was exchanged for the stock in 1944, the net worth statement in subsequent years reflects such property among petitioner's assets at a total value of $12,500. The "liabilities" shown on the net worth statement included reserves for depreciation on petitioner's depreciable property. Adjustments were also made for long-term capital gains realized during the years in issue. For the year 1950, petitioner reported *215 total taxable income of $22,451.10 and tax due thereon of $5,205.44. He paid $5,0 0 on his declaration of estimated tax for such year. The respondent determined that petitioner received the following amounts of net income during the years in issue: 1944
$ 9,925.73
1945
13,640.28
1946
9,556.31
1947
13,731.14
1948
13,716.51
1949
11,581.34
1950
28,379.10
Respondent was justified in using the net worth method to determine the amount of petitioner's taxable income during the years in issue. No part of the deficiencies was due to fraud with intent to evade tax and none of the returns were false or fraudulent with intent to exade tax. Opinion RICE, Judge: This case turns largely on the failure of the parties to carry their respective burdens of proof. It was incumbent upon the respondent to prove by clear and convincing evidence that the deficiencies determined by him, which were presumptively correct, were due to fraud with intent to evade tax, and that the returns were false or fraudulent. He failed to carry that burden. It was petitioner's burden to overturn the respondent's determination of deficiencies in his income. He likewise failed to offer sufficient evidence to do so. The petitioner argues *216 at some length on brief that the respondent, first of all, was not justified in using the net worth method in determining deficiencies in his income. This he says is so because an accountant, whom he employed to assist the revenue agents, testified that his books and records substantially agreed with his returns as filed. That argument is bottomed on a fallacious premise. The Supreme Court, as well as this Court on several occasions, has held that even though the books maintained by a taxpayer reflect the income reported by him, a net worth computation which indicates income received in excess of that reported discredits the books and records as false or inaccurate. ; , on appeal C.A. 6, May 15, 1956; ; , affd. (C.A. 4, 1955), certiorari denied . It appears to us that the principal point of contention in this case is the amount of depreciation which petitioner was entitled to claim on a great number of income-producing properties which he owned. His records were woefully inadequate to *217 determine the correct amount of depreciation to which he was entitled, and we think the respondent was fully justified in resorting to the net worth method in computing his income. At the same time, we think it may well be that petitioner made improvements to various pieces of his farm properties prior to the years in issue, as he claims to have done, and that no allowance was made by the respondent in his net worth computation for such improvements. But petitioner failed to offer convincing evidence that such improvements were, in fact, made. We cannot accept his wholly uncorroborated testimony as to the time when such improvements were made, the cost thereof, or their normal life expectancy. He testified that prior to 1944 he had made improvements totaling $11,400 to four of the farms and a cotton gin which he owned. If that were true, it would have a material effect on the net worth computation of his income. The amount of allowed or allowable depreciation on petitioner's property, of course, also affects the amount of gain realized by him on the sale of certain of his income-producing properties during the years in issue. So also with the property received by him from the Burton *218 Manufacturing Company in 1944. Some of the machinery was sold in subsequent years and he claimed a loss on such sales which the respondent disallowed. The petitioner claimed that the basis of the property received was far in excess of the $12,500 allowed. Presumably, the respondent determined the basis of this property pursuant to section 113(a)(6) which provides that the basis of property received in a tax free exchange shall have the same basis as the property transferred. Petitioner first transferred the property to the company in consideration for its stock, which, presumably, was worth $12,500 at the time, and notes. The notes may have been paid sometime prior to July 30, 1943, for the deed of trust securing them was released at that time, which would have left petitioner's cost basis of the stock at $12,500. In any event, the petitioner has not demonstrated that the respondent's determination of the basis of the property received by him from the Burton Manufacturing Company was in error and we therefore conclude that such determination was correct. Nevertheless, we think petitioner may have sincerely believed that the property had a higher basis in his hands and that the loss *219 claimed on the sale of the machinery, as well as the depreciation claimed on other property, which was in excess of that allowed by the respondent, was due to honest mistake rather than to any willful intent to defraud. Petitioner also testified that he sustained losses because of tobacco barns which had burned on several farms during the years in issue and because of the death of livestock used on the farms. Such casualty losses were also claimed by him on his returns. But, other than his own testimony, he offered no evidence whatsoever as to those losses. He did not attempt to specifically identify the barns which burned or the animals which died. We do not know, in fact, if such items of property were even included by respondent in the net worth computation, and we are therefore unable to make any adjustment for those alleged losses. Other than the apparently incorrect and excessive amounts of depreciation claimed, the respondent can point only to the successive understatements of income in each of the years in issue to prove his allegation of fraud. He does not suggest, nor do we find, any evidence of some undisclosed source of income. We think those understatements, standing alone *220 in this record, are insufficient to show a clear intent to defraud. We particularly observed the petitioner's demeanor on the stand during the course of the hearing and we have carefully re-examined his testimony and that of the revenue agents. While we think it was both possible and necessary for petitioner to have offered corroborating evidence to his testimony, we cannot say that he testified falsely. Rather, his testimony was more a matter of vague recollection which he may have supposed the Court could accept at face value. Thus, although we uphold the respondent's determination, we do not find that the deficiencies were due to a fraudulent intent to evade tax. Since none of the returns were false or fraudulent with intent to evade tax, section 276(a) bars the assessment and collection of the deficiencies determined for the years 1944 to 1948, inclusive. In addition to his arguments with reference to the basis of the property received from the Burton Manufacturing Company, the amounts of allowable depreciation, and casualty losses, petitioner, on brief, points out two other specific points of disagreement with the respondent's net worth computation. The parties agree that $1,000 *221 was deposited by petitioner in his bank account on April 19, 1944. Petitioner claimed that $925.93 of such sum represented a collection of notes owed to him. In the net worth computation, the respondent determined that petitioner had an unidentified note or notes in the amount of $500 due and owing to him at the beginning of 1944, and that such note or notes were paid in full during the year. The petitioner argues that that figure should be increased by $425.93. We cannot allow petitioner's claim for the reason that he failed to prove that any more than the $500 included by the respondent among his notes receivable was, in fact, owed him by some unidentified person or persons on December 31, 1943, and was paid on or before April 19, 1944. The respondent added $1,500 each year to petitioner's annual increase in net worth to cover the amount of his estimated living expenses paid in cash. Petitioner claimed that such amounts should not have been added. However, he offered no proof that such amounts were wrong, and we therefore conclude that the respondent correctly determined that the amount of $1,500 during each of the years in issue was a reasonable approximation of the additional amount *222 of petitioner's non-deductible personal living expenses paid in cash. Since petitioners underestimated the amount of tax due by them for 1950 by more than 20 per cent, the respondent properly imposed an addition to tax for that year as provided in section 294(d)(2). Decisions will be entered under Rule 50. Footnotes
*. Adjusted gross income.↩